IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RONALD D. F., <br><br> Plaintiff, <br><br> v. <br><br> LELAND DUDEK, acting Commissioner of Social Security, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER ADOPTING REPORT AND RECOMMENDATION** <br><br> Case No. 1:24-cv-00079 <br><br> Chief District Judge Robert J. Shelby <br><br> Magistrate Judge Dustin B. Pead |

Before the court is Chief Magistrate Judge Dustin B. Pead's Report and Recommendation,[1] in which Judge Pead recommends denying Plaintiff D.F.'s Motion for Review of Agency Action.[2] For the reasons stated below, Plaintiff's Objections are OVERRULED,[3] the Report and Recommendation is ADOPTED in its entirety, and Plaintiff's Motion is DENIED.

## BACKGROUND[4]

Plaintiff seeks judicial review of the Acting Social Security Commissioner's decision denying his claim for disability (the Decision) under the Social Security Act (the Act).[5] Plaintiff applied for disability insurance benefits in August 2021, alleging a disability onset relating to visual disturbance and dysfunction on July 1, 2021.[6] Plaintiff's claim was denied initially and

---

[1] Dkt. 19, *Report & Recommendation* (*Report*).

[2] Dkt. 7, *Opening Brief* (*Motion*).

[3] Dkt. 20, *Objection to Report and Recommendation* (*Objection*).

[4] These facts are drawn from the administrative record.

[5] *Motion*.

[6] Dkt. 6-2, *ALJ Decision* at 12; Dkt. 6-3 at 2–3.

denied again upon reconsideration.[7] Plaintiff then filed a request for a hearing and appeared on June 1, 2023 before Administrative Law Judge (ALJ) Preston Mitchell.[8] The ALJ continued the hearing to allow Plaintiff additional time to obtain legal representation and gather further medical evidence.[9] Still without counsel, Plaintiff subsequently appeared and testified at a later hearing held on September 28, 2023, in Salt Lake City, Utah.[10] Shortly thereafter, ALJ Mitchell issued his written Decision denying Plaintiff's disability claim.[11]

ALJ Mitchell considered medical records, personal observations, opinions rendered by state agency medical consultants, and an opinion letter written by Dr. Robert Kersten.[12] With respect to the Kersten Letter, ALJ Mitchell declined to afford persuasive value to the statement that opined on ultimate issues specifically reserved for the Commissioner: whether Plaintiff was disabled and whether he could maintain employment.[13] Otherwise, ALJ Mitchell stated that he found the rest of the Kersten Letter persuasive.[14]

Relying on these records, ALJ Mitchell found that Plaintiff had severe impairment of the eye stemming from paralytic lagophthalmos of the upper and lower eyelid of the left eye, and bilateral blepharospasm, apraxia and myogenic ptosis of both eyelids.[15] However, ALJ Mitchell determined that Plaintiff's eye conditions did not meet or medically equal one of the severe,

---

[7] *ALJ Decision* at 12; Dkt. 6-4 at 6–12.

[8] *ALJ Decision* at 12; Dkt. 6-4 at 13–14.

[9] *ALJ Decision* at 12.

[10] *Id.* at 12; Dkt. 6-2, *Transcript* at 39.

[11] *ALJ Decision* at 12–20.

[12] *Id.* at 14–20.

[13] *Id.* at 18.

[14] *Id.*

[15] *Id.* at 15.

statutorily listed impairments relating to visual disturbance and dysfunction.[16]  Furthermore, ALJ Mitchell found that Plaintiff retained residual functional capacity (RFC)—occasional near acuity and depth perception—to perform "medium work" as defined under the Act and that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."[17]

Plaintiff moved this court to review ALJ Mitchell's decision.[18]  The acting Social Security Commissioner filed a Brief in Opposition,[19] and Plaintiff filed a Reply.[20]  Judge Pead then issued his Report,[21] to which Plaintiff objected[22] and the Commissioner subsequently responded.[23]  Plaintiff's Motion and the Report are ripe for review.

## LEGAL STANDARDS

The standard of review for a magistrate judge's report and recommendation depends on the sufficiency of the objection.  To qualify as a proper objection that triggers de novo review, the objection must be both timely—that is, made within fourteen days—and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute."[24]

Furthermore, this court's review of agency action "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are

---

[16] *Id*.

[17] *Id*. at 15–20.

[18] *Motion*.

[19] Dkt. 13, *Defendant's Answer Brief*.

[20] Dkt. 16, *Reply Brief*.

[21] *Report*.

[22] *Objection*.

[23] Dkt. 21, *Response to Plaintiff's Objection to Report and Recommendation*.

[24] *See United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) ("[Objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

supported by substantial evidence."[25]  Here, the ALJ's factual findings are "conclusive if supported by substantial evidence."[26]  And while the threshold for evidentiary sufficiency under the substantial evidence standard is "not high,"[27] substantial evidence is defined as "more than a mere scintilla" and it must be sufficiently relevant that "a reasonable mind might accept as adequate to support a conclusion."[28]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[29]  Thus, where the evidence taken together may support either awarding or denying benefits, the agency's decision must be affirmed.[30]

The ALJ's review of disability claims is governed by 42 U.S.C. § 1382c(a)(3)(A).  Under this provision, "disability" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[31]  In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation to consider the following: 1) whether the claimant is engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the impairment is equivalent to an impairment precluding substantial gainful activity as listed in the appendix of the relevant disability regulation; 4) whether the claimant has the RFC

---

[25] *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quotation and citation omitted); *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).

[26] *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (quotation and citation omitted).

[27] *Id*. at 1154.

[28] *Noreja*, 952 F.3d at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)).

[29] *Lax v. Astrue*, 489 F. 3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

[30] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[31] 42 U.S.C. § 1382c(a)(3)(A).

to perform past relevant work; and 5) whether the claimant has the RFC to perform other work, considering her age, education and work experience.[32]

Under the operative regulations,[33] an ALJ is required to weigh the persuasiveness of all opinions relating to a claim for disability using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding.[34]  However, "[t]he most important criteria are supportability and consistency and an ALJ is required to explain how the supportability and consistency factors were considered."[35]  Tenth Circuit law instructs that where an ALJ errs by failing to articulate the consistency factor, such an error is harmless only "if there is no inconsistency between the opinion and the ALJ's assessment of [RFC]."[36]  This is because, in such a scenario, giving "greater weight" to the opinion would not help the claimant.[37]

## ANALYSIS

Plaintiff advances two timely and sufficiently specific objections related to the Kersten Letter, triggering de novo review.  First, contrary to Judge Pead's conclusion, Plaintiff argues ALJ Mitchell failed to adequately develop the record by declining to recontact Dr. Kersten to ascertain additional facts concerning his opinion that Plaintiff was disabled.[38]  Second, Plaintiff argues the ALJ failed to weigh the relevant factors in evaluating the persuasiveness of the

---

[32] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987).

[33] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (SSA Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132 (Mar. 27, 2017)).

[34] 20 C.F.R. § 404.1520c(c).

[35] *Schroeder S. v. O'Malley*, No. 2:23-cv-16 DBP, 2024 WL 664716, *2 (D. Utah Feb. 15, 2024); 20 C.F.R. § 404.1520c(b)(2).

[36] *Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014).

[37] *Id*. at 579.

[38] *Objection* at 1–2.

5

Kersten Letter as required by operative regulations.[39] On this point, Plaintiff contends Judge Pead erred in concluding that the ALJ's failure was harmless.[40]

The court finds the AJL's findings are supported by substantial evidence. Furthermore, the persuasive portion of the Kersten Letter is in line with ALJ Mitchell's RFC determination such that the ALJ's failure to weigh the Letter's consistency factor was harmless.

### I.   The ALJ's Decision Was Supported by Substantial Evidence Notwithstanding Only One Letter from Dr. Kersten.

Plaintiff challenges the ALJ's consideration of the Kersten Letter and Judge Pead's determination that ALJ had no duty to further develop the record by re-contacting Dr. Kersten.[41] The court finds ALJ Mitchell's decision was supported by substantial evidence and there was no duty to recontact Dr. Kersten.

The Kersten Letter, in its entirety, states as follows:

> Patient has blepharospasm and apraxia of eyelid opening that has not responded well to two previous surgeries and recurrent botulinum toxin injections. This makes it difficult to keep his eyes open while working. Several different regimens of injections have been given but none have given persistent relief. I would consider him to be disabled for consistent employment. This is expected to progressively worsen with time.[42]

ALJ Mitchell concluded that he found the letter "partly persuasive."[43] He echoed the Kersten Letter in finding that Plaintiff suffered from a severe impairment of the eye stemming from blepharospasm and apraxia and acknowledged that such conditions caused Plaintiff to have difficulty keeping his eyes open.[44] In fact, relying on additional medical assessments, ALJ

---

[39] *Objection* at 2–4.

[40] *Id*.

[41] *Id*. at 1–2.

[42] Dkt. 6-7, *Kersten Letter* at 123.

[43] *ALJ Decision* at 17.

[44] *ALJ Decision* at 15, 18.

Mitchell found that Plaintiff was also "variously" diagnosed with paralytic lagophthalmos and myogenic ptosis, terms or conditions not discussed in the Kersten Letter.[45]

However, the ALJ determined it would not assign persuasive value to a statement in the Kersten Letter opining Plaintiff is disabled because such a determination is reserved to the Commissioner.[46] And although Plaintiff concedes ALJ Mitchell correctly found these conclusions unpersuasive for that reason,[47] he argues the ALJ had a duty to recontact Dr. Kersten so that he could clarify his conclusion on the ultimate issue of Plaintiff's disability in functional terms.[48]

The law does not impose such a duty. To the contrary, the law notes that statements on issues reserved to the Commissioner "[are] inherently neither valuable nor persuasive" to an ALJ's conclusion about Plaintiff's disability status, and an ALJ need not provide "any analysis" about the consideration of such statements.[49] And for this court's purposes, the law requires it only to consider whether the ALJ's Decision was supported by substantial evidence.

The court is satisfied that ALJ Mitchell's conclusion that Plaintiff retained RFC to complete "medium work" was a reasonably drawn from sufficient evidence.[50] Relying on a series of medical records and assessments beyond the Kersten Letter, ALJ Mitchell reasonably found that Plaintiff has consistently retained full extraocular movements and visual fields,[51]

---

[45] *Id*. at 15; *see also Kersten Letter* at 123.

[46] *ALJ Decision* at 18 (relying on 20 C.F.R. § 404.1520b(c) and 20 C.F.R. § 416.920b(c)). For context, 20 C.F.R. § 404.1520b(c) states "Because [a statement on an issue reserved to commissioner] is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, we will not provide *any analysis* about how we considered such evidence in our determination or decision, even under [provision requiring ALJ to discuss an opinion's consistency and supportability].") (emphasis added).

[47] *Motion* at 7.

[48] *Motion* at 7–9; *Objection* at 1–2.

[49] *See* 20 C.F.R. § 404.1520b(c).

[50] *ALJ Decision* at 15–18.

[51] Dkt. 6-7, *Medical Records* at 97, 119.

could distinguish between colors,[52] received relief from botulinum injections,[53] received relief from surgery,[54] was infrequently in pain,[55] and that both eyes most recently exhibited 20/40 vision.[56] ALJ Mitchell reasonably relied on these findings in determining Plaintiff's impairments, though substantial, did not result in disabling limitations.[57]

Additionally, ALJ Mitchell explicitly accounted for the Kersten Letter's statement that no treatment had provided "persistent relief" for Plaintiff's condition in his assessment of Plaintiff's RFC, leading him to restrict Plaintiff to employment that does not require him to work at unprotected heights or to frequently complete tasks requiring acuity and depth perception.[58] Thus, not only was ALJ Mithcell's decision supported by substantial evidence, it is unclear how additional correspondence from Dr. Kersten would have meaningfully added to the evidentiary record. While it's possible that Dr. Kersten, in a subsequent letter, could have described Plaintiff's symptomology in functional terms that may have guided ALJ Mitchell to an alternative conclusion, this is both speculative and legally irrelevant on appeal. There was ample record evidence for ALJ Mitchell to reasonably conclude that Plaintiff did not qualify as disabled. That an additional letter *may* have allowed the ALJ to arrive at a different conclusion misstates the "substantial evidence" standard of review.

While it is true ALJ Mitchell's duty to develop the record was "heightened" due to Plaintiff's pro se status at the disability hearing,[59] the court finds that ALJ Mitchell met this duty.

---

[52] *Transcript* at 53.

[53] *Medical Records* at 4–5, 57, 70, 73, 79, 85, 91.

[54] *Medical Records* at 17–18, 53 ("Since surgery, Mr. [F.] reports feeling better, 'I can see now.'").

[55] *Id.* at 91.

[56] *Id.* at 119.

[57] *ALJ Decision* at 15–18.

[58] *ALJ Decision* at 18.

[59] *Miracle v. Barnhart*, 187 F. App'x 870, 874 (10th Cir. 2006).

He continued the original hearing to give Plaintiff additional time to gather medical records and obtain counsel should he desire representation.[60]  Additionally, ALJ Mitchell relied on state-agency medical consultants and treatment notes to inform his analysis of Plaintiff's condition and whether it produced disabling effects.[61]  This was not a "mere scintilla" of evidence but rather over 100 pages of medical records.[62]

## II. ALJ Mitchell Failed to Weigh the Consistency of the Kersten Letter.

Plaintiff and Judge Pead agree that ALJ Mitchell failed to weigh the consistency of the Kersten Letter.[63]  The Commissioner's position "is that the ALJ adequately discussed the consistency factor and there was no error," but counsels that there is "no need" for this court to make such a finding to adopt the Report.[64]

The court agrees with Plaintiff and Judge Pead that ALJ Mitchell failed to address the consistency factor when evaluating the persuasiveness of the Kersten Letter.  "Consistency" refers to an ALJ's duty to cross reference an opinion with evidence from other medical and nonmedical sources in the record.[65]  Here, rather than compare the Kersten Letter with other record evidence, ALJ Mitchell only considered the Letter's *supportability*: specifically, ALJ Mitchell explained that "Dr. Kersten's statement that the claimant's eyelid condition makes it difficult for him to keep his eyes open while working *is supported with explanation and*

---

[60] *ALJ Decision* at 12.

[61] *Id*. at 15–18.

[62] *Medical Records*.

[63] *See Report* at 9; *Objection* at 2–3; *Motion* at 9–10.

[64] *Response to Plaintiff's Objection to Report and Recommendation* at 3 n.1.

[65] 20 C.F.R. § 404.1520c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim").

*reference to the claimant's diagnoses and response to recent treatment*."[66]  He in turn stated that he found this statement within the letter "persuasive" and "accounted" for it "by restricting [Plaintiff] to never working at unprotected heights . . . ."[67]  In coming to this conclusion, ALJ Mitchell nowhere addresses whether this portion of the Kersten Letter was consistent with other evidence in the record, which constitutes legal error.[68]

### III. The ALJ's Failure to Explicitly Weigh the Kersten Letter's "Consistency Factor" Was Harmless.

Plaintiff objects[69] to the Report's conclusion that, despite the ALJ's failure to address the consistency factor, the failure was harmless because there was "no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[70]  Plaintiff contends that the failure rendered this court "unable to meaningfully review the ALJ's decision."[71]

The court is unpersuaded.  The ALJ explicitly adopted the portion of the Kersten Letter relating to Plaintiff's eye conditions and symptoms into his assessment of Plaintiff's RFC.[72]  The ALJ accepted as true that Plaintiff has difficulty keeping his eyes open at work because his treatments did not provide "persistent relief," as opined by Dr. Kersten, which in turn supported his conclusion that Plaintiff should not work at unprotected heights.[73]  However, nothing in the admissible portion of the Kersten Letter undermines or is inconsistent with the ALJ's assessment

---

[66] *ALJ Decision* at 18.

[67] *Id.*

[68] *Michael H. v. O'Malley*, No. cv-23-1067-JWL, 2024 WL 125961 (D. Kan. Jan. 11, 2024).

[69] *Objection* at 2–3.

[70] *Report* at 11 (quoting *Ortega v. Kijakazi*, No. cv-2:22-0322-KRS, 2023 WL 1818369 (D.N.M. Feb. 8, 2023)).

[71] *Objection* at 3 (citing *Sanscrainte v. Comm'r of Soc. Sec.*, No. 1:23-CV-1073, 2024 WL 3466273, at *8–9 (W.D. Mich. July 19, 2024)).

[72] *ALJ Decision* at 18.

[73] *Cf. Sanscrainte*, 2024 WL 3466273, at *8–9 (finding the ALJ prejudiced Plaintiff by *rejecting* a medical opinion for which the ALJ did not discuss the opinion's supportability).

of RFC.[74]  The Kersten Letter, a total of four sentences in length, does not assert any opinion that contradicts the ALJ's conclusion that Plaintiff retains occasional near acuity and depth perception.  Tenth Circuit law makes clear that an ALJ's failure to weigh the consistency factor of medical evidence is harmless where there is no "inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[75]  Here, there is no inconsistency because affording "greater weight" to the valuable portion of the Kersten Letter would not help Plaintiff.[76]

Thus, although the ALJ improperly took the Kersten Letter's consistency for granted, doing so did not harm Plaintiff—and does not hamper this court's review of the Letter—because the ALJ found the admissible portion of the Kersten Letter persuasive, and incorporated this portion into his assessment of Plaintiff's RFC.  Plaintiff is correct that this court is not permitted to "provide a post hoc rationale" [77] for an ALJ's decision.  But the court is required to "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."[78]  Here, despite ALJ Mitchell's failure to address the Kersten Letter's consistency, the court readily

---

[74] The court acknowledges that there is a considerable discrepancy in the Kersten Letter's opinion about the success of Plaintiff's surgeries and treatments and the ALJ's consideration of the same.  *Compare Kersten Letter* at 127 "Patient has blepharospasm and apraxia of eyelid opening that has not responded well to two previous surgeries and recurrent botulinum toxin injections," *with ALJ Decision* at 17 "the medical evidence shows that he has achieved significant improvement in his visual field with surgery prior to the alleged onset date and since the alleged onset date, he has treated his condition with Botox injections, which have worked well for him and provided him relief from the squeezing."  But the Kersten Letter's conclusion that Plaintiff has difficulty keeping his eyes open—although it rested in part on an interpretation of the effectiveness of Plaintiff's surgeries and treatments contrary to ALJ's interpretation of those treatments and surgeries—is itself not at odds with the ALJ's determination on RFC.

[75] *Mays*, 739 F.3d at 578–79.

[76] *Id*. at 579.  *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (determining ALJ's failure to weigh a medical report that "expresses few conclusions about [claimant's] physical capacities but . . . opined that [claimant] could sit, stand, or walk for eight hours at a time and for eight hours in an eight-hour workday" was not harmful); see also *id* (declining to find harmful error for a separate medical report that the ALJ failed to properly weigh because it contained a statement "opining that [claimant] had 'no limitation' or 'no significant limitation' in *every* category relevant to work function.") (emphasis in original).

[77] *Objection* at 2 (citing *Hunter-Hendrix v. Astrue*, 363 F. App'x 588, 592 (10th Cir. 2010) (unpublished)).

[78] *Davis v. Erdmann*, 607 F.2d 917, 919 (10th Cir. 1979).

understands that ALJ Mitchell accepted as persuasive the Kersten Letter for its conclusion that Plaintiff struggles to keep his eyes open, and that this conclusion is not at odds with ALJ Mitchell's RFC determination.

## CONCLUSION

Plaintiff's Objections are OVERRULED, the Report and Recommendation is ADOPTED in its entirety,[79] and Plaintiff's Motion is DENIED.[80] The Clerk of Court is directed to close the case.

SO ORDERED this 1st day of April 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[79] Dkt. 19.
[80] Dkt. 7.